***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Harris and enters the following Opinion and Award:
 *********** EXHIBITS
At the hearing before the Deputy Commissioner, the following documents were accepted into evidence as stipulated exhibits:
 a. Exhibit 1: Executed Pre-Trial Agreement
 b. Exhibit 2: Industrial Commission Forms and filings *Page 2 
 c. Exhibit 3: Transcript of Plaintiff's recorded statement
 d. Exhibit 4: Plaintiff's personnel file
 e. Exhibit 5: Parties' discovery responses
 f. Exhibit 6: Plaintiff's medical records
Transcripts of the depositions of the following were also received post-hearing:
 aa. Dr. Michael G. Rallis
 bb. Dr. Constance Lee Baker (with Plaintiff's Exhibit 1)
 cc. Dr. David Allen, Jr. (with Defendants' Exhibit 1)
 dd. Dr. Donald D. Getz (with Exhibit 1)
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. The parties have been correctly designated.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. The carrier on the risk is correctly named.
5. An employment relationship existed between Plaintiff and Defendant-Employer on May 20, 2008.
6. Plaintiff had an average weekly wage of $379.71, yielding a compensation rate of $253.14.
 *********** *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 56 years of age, with a date of birth of August 8, 1953. She obtained her GED in 1983. Prior to working for Defendant-Employer, Plaintiff had worked in retail sales, a clerical position, housekeeping, manufacturing, and as a receptionist.
2. As of May 20, 2008, the date of injury in this claim, Plaintiff was working as a manager at Defendant-Employer's store in Burgaw, North Carolina.
3. Prior to May 20, 2008, Plaintiff had sought medical attention periodically over the previous several years for low back pain. Her medical records from 2003 onward reflect several episodes of radiating pain down both her right and left legs, and sometimes both. On June 17, 2003, Plaintiff underwent a lumbar MRI, which showed disk bulges at L2-3 and L3-4.
4. On April 26, 2008, less than one month before the date of injury in this claim, Plaintiff presented to her local emergency room with complaints of low back pain with sciatica down the right side.
5. Plaintiff's primary care doctor in the months leading up to the injury in this claim was Dr. Baker. On April 28, 2008, Plaintiff presented to Dr. Baker with a complaint of back pain over the previous three days. The record from that date notes low back pain radiating down the posterior thigh (whether it was the left or right thigh, or both, was not noted in the record). Dr. Baker diagnosed sciatica and prescribed Prednisone, Vicodin, and Flexeril. She also instructed Plaintiff to avoid deep knee flexion and wrote her out of work through April 30, 2008. *Page 4 
6. Plaintiff returned to Dr. Baker on May 6, 2008. Dr. Baker noted that Plaintiff's sciatica was better but also noted nerve pain/paresthesias in the "feet." At that time, Dr. Baker discussed with Plaintiff that the bilateral foot symptoms should be further evaluated with imaging, a nerve conduction study, and/or a neurological consultation. The May 6, 2008, visit with Dr. Baker was the last medical treatment Plaintiff sought before the date of injury in this claim.
7. On May 20, 2008, Plaintiff was at work at the Burgaw store. A truck had just delivered approximately 70 boxes of stock, and Plaintiff was putting up the boxes. At about 10 a.m., as she lifted a box of bread in the freezer and twisted to put it up, she felt a pull in her left side in her low back and into her hip and buttocks. She developed burning pain, and it felt like she was toting a weight on her left side. She also had pain in her left groin area from the incident.
8. Putting up stock was a regular part of Plaintiff's job duties, and it was not unexpected that she would have to put up boxes. There was no slip or unusual occurrence associated with the lifting incident on May 20, 2008.
9. Plaintiff's pain increased throughout the day on May 20, but she was able to finish out her shift, which ended at 3:30 p.m.
10. Plaintiff's first medical treatment following May 20, 2008, was with Dr. Baker, on May 21, 2008. Dr. Baker's note from that visit states, "loading truck and developed acute onset of left groin pain." Dr. Baker diagnosed Plaintiff with a left groin strain and also stated in her note that, "now pain in back responds to massage/heat." The note also contains an "addendum" stating, "(patient) still has LBP/sciatica and will treat as above." Dr. Baker noted that Plaintiff's back was "tender @ L4." Dr. Baker wrote Plaintiff out of work for both her groin and low back symptoms and ordered physical therapy.
11. Plaintiff did physical therapy twice a week over the next three weeks. *Page 5 
12. Plaintiff returned to Dr. Baker on May 27, 2008, and again on June 3, 2008. At each visit, Dr. Baker again diagnosed a left groin strain. Each of the records for these two appointments also contains an "addendum" noting "LBP/sciatica", and each also contains a notation that Plaintiff's back was "tender @ L4." On June 3, 2008, Dr. Baker again wrote Plaintiff out of work for both her groin and low back symptoms.
13. On June 10, 2008, without seeing Plaintiff again, Dr. Baker wrote Plaintiff out of work, for both her groin and low back symptoms, until an orthopedist released Plaintiff to return to work.
14. Plaintiff did not return to Dr. Baker after June 3, 2008. Plaintiff did not obtain an orthopedic consultation because of her lack of funds and health insurance, and because Defendants denied this claim.
15. Upon Plaintiff's counsel's referral, Plaintiff saw Dr. Allen, an orthopedic surgeon, on March 31, 2009. In her history to Dr. Allen, Plaintiff told him that she had not had any left-sided issues before the May 20, 2008, incident.
16. Dr. Allen examined Plaintiff and assessed her with left hip pain, left buttock pain, low back pain, left sacroiliac joint pain, lumbar spinous process pain, and left gluteal pain. He assigned restrictions of no lifting more than 10 pounds and no bending. He also recommended that Plaintiff undergo a lumbar MRI. There is no evidence of record that Dr. Allen told Plaintiff of the restrictions that he was assigning. Plaintiff testified on April 15, 2009, before the Deputy Commissioner, that she had not been made aware of those restrictions. The Full Commission finds that Plaintiff had notice of her work restrictions, and release to work with those restrictions, on April 15, 2009. *Page 6 
17. With respect to causation for Plaintiff's low back symptoms, Dr. Allen wrote, "Patient states she did not have low back pain radiating down left leg until after accident at work . . . We feel this pain is related to the work injury sustained on 5/20/08 since she has never had any history of left sided pain prior to injury."
18. Plaintiff did not see Dr. Allen again after March 31, 2009.
19. Dr. Baker testified that she recalled Plaintiff telling her that she had acute groin pain with the May 20, 2008, lifting incident, then continuing back pain. Dr. Baker was certain that Plaintiff probably had a groin strain as a result of the incident, and she testified to a reasonable degree of medical certainty that the incident caused an aggravation of Plaintiff's pre-existing low back condition.
20. Dr. Baker felt that Plaintiff had suffered a muscle spasm in her low back in the incident. Dr. Baker also felt that Plaintiff's groin complaint was indicative of "really, a groin pull" rather than referred pain from a back injury.
21. Dr. Baker characterized Plaintiff's sciatica as a "new issue" as of April 28, 2008, and she testified that this condition had a "flare" on May 20, 2008. Dr. Baker further testified that, whereas Plaintiff had an acute low back problem on April 28, 2008, by June 3, 2008, the acute problem she was treating was Plaintiff's groin strain. Dr. Baker confirmed that her primary concern at the May 21, May 27, and June 3, 2008, visits was a groin strain. Dr. Baker did clarify that she did continue to treat Plaintiff's low back flare-up as of June 3, 2008.
22. Dr. Allen opined that, at the least, Plaintiff suffered an aggravation of her pre-existing low back condition in the May 20, 2008, lifting incident. As he testified: (1) if Plaintiff had no history of any left-sided radicular symptoms before the incident, then Plaintiff's low back condition was entirely caused by the incident; (2) if Plaintiff had a history of left-sided symptoms *Page 7 
that had gotten better before the incident, then the incident caused an aggravation of a pre-existing condition; and (3) if Plaintiff were doing just as badly on the left side before the incident as after, then there would be no causal relationship.
23. Dr. Allen testified that the groin symptoms Plaintiff had with the May 20, 2008, lifting incident could have been radicular in nature, but there was really no way to differentiate between that and a pulled groin absent further diagnostic testing.
24. Dr. Allen deferred to Dr. Baker for commentary on Plaintiff's condition after the May 20, 2008, incident as compared to her condition before the incident.
25. Dr. Getz, a retired orthopedist and board-certified independent medical examiner whom Defendants hired to review Plaintiff's medical records, opined that the May 20, 2008, incident did not significantly contribute to Plaintiff's overall condition of chronic, recurring low back pain with intermittent radiation into the legs. He based his opinion on Plaintiff's medical history and his belief that there was not a significant difference between Plaintiff's pre- and post-incident conditions.
26. Plaintiff testified that she has continued to have pain in her low back, left buttocks, and down the back of her left leg, with numbness and tingling in her left foot, since the incident on May 20, 2008. Plaintiff testified that the nature and intensity of that pain has remained the same since the incident. She testified that standing bothers her.
27. Plaintiff further testified that the low back symptoms she attributes to the May 20, 2008, incident are different from the low back symptoms she had before that date, in that the prior symptoms did not involve the left leg.
28. Plaintiff has not worked anywhere since May 20, 2008. She began looking for work in about February 2009, filing applications on-line, through the ESC, and responding to *Page 8 
newspaper advertisements. As of the date of the hearing before the Deputy Commissioner, Plaintiff had looked for work as a secretary, receptionist, or caregiver; positions she believed she could perform because they would not require standing or heavy lifting.
29. Since the May 20, 2008, incident up to the date of the hearing before the Deputy Commissioner, Plaintiff had babysat her niece's healthy two-year-old boy about 14 times, for about eight hours at a time. Plaintiff's niece testified that she would not be comfortable leaving her son with Plaintiff if Plaintiff were not able to pick him up.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a groin injury in the May 20, 2008, incident, but there was no injury by accident, as the incident did not involve any unusual circumstance or departure from Plaintiff's normal work routine. As such, the groin injury is not compensable. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has shown that she sustained a temporary aggravation of her underlying chronic low back condition in the May 20, 2008, specific traumatic incident. However, she has not carried her burden to show that her ongoing low back condition is causally related to the May 20, 2008, incident and/or the temporary aggravation of her low back condition was caused by that incident.Id.
3. Plaintiff has shown that she was disabled from the compensable temporary aggravation of her low back condition, in that she was entirely medically unable to work because of such temporary aggravation, for the period from May 21, 2008, through April 15, 2009, the *Page 9 
time at which Plaintiff was notified by counsel of her restrictions. As such, Plaintiff is entitled to receive temporary total disability (TTD) compensation from Defendants for that period. N.C. Gen. Stat. §§ 97-28 and 97-29.
4. Plaintiff is not entitled to receive TTD compensation from Defendants beyond the period set out in Paragraph 3 above.
5. Plaintiff is entitled to have Defendants pay for the medical treatment she received for her compensable temporary aggravation of her low back condition with and/or at the direction of Dr. Baker, from May 21, 2008, through April 15, 2009, including but not limited to consultations, prescriptions, physical therapy, and/or mileage. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
6. Plaintiff is not entitled to have Defendants provide any further medical treatment to her beyond that set out in Paragraph 5 above.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to an attorney's fee hereinafter approved, Defendants shall pay to Plaintiff, in a lump sum, TTD compensation for the period from May 21, 2008, through and including April 15, 2009, at the compensation rate of $253.14 per week.
2. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due Plaintiff under Paragraph One of this Award is approved for Plaintiff's counsel and shall be paid by Defendants to Plaintiff's counsel directly. *Page 10 
3. Defendants shall pay for the medical treatment that Plaintiff received with and/or at the direction of Dr. Baker from May 21, 2008 through April 15, 2009, including but not limited to consultations, prescriptions, physical therapy, and/or mileage. To the extent that Plaintiff and/or any third-party payor has paid for such treatment, Defendants shall reimburse such payor in full.
4. Defendants shall pay the costs.
This the 1st day of July, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG CHAIR
 S/_____________ STACI T. MEYER COMMISSIONER *Page 1